FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 0 8 2022

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) CRIMINAL NO. 22-368MIS |
| vs. | ) Counts 1-34: 18 U.S.C. § 1343: Wire Fraud; |
| **CHRISTOPHER ADAM JENSEN-TANNER,** | ) Counts 35-38: 18 U.S.C. § 1957: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity. |
| Defendant. | ) |

INDICTMENT

The Grand Jury charges:

Counts 1-34

1.  From on or about January 11, 2017, and continuing to on or about October 23, 2019, in Chaves County, in the District of New Mexico, and elsewhere, the defendant, **CHRISTOPHER ADAM JENSEN-TANNER**, with intent to defraud, knowingly and unlawful devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the scheme and artifice caused writings, signs, and signals to be transmitted by means of wire communications in interstate commerce.

The Scheme and Artifice

2.  **JENSEN-TANNER**'s scheme and artifice consisted of using his position at Roswell Escrow Services, Inc. (RES) to fraudulently direct funds belonging to RES customers to make personal consumer purchases and otherwise acquire personal assets.

3. **JENSEN-TANNER** was the owner and president of RES as well as one of two corporate directors. RES had two significant sources of revenue: first, as a Qualified Intermediary for clients participating in 1031 exchanges (referring to Internal Revenue Service Code Regulation 1031), and second, as a servicer for real estate contracts. As a Qualified Intermediary, RES held proceeds from a real property sale in trust for a client for a period of up to 180 days, during which time the clients could purchase a like-in-kind property with the funds and avoid capital gains. As a real estate contract servicer, RES would receive monthly payments from a real property buyer; take a portion of the payment for insurance, property taxes, and fees; and remit the balance to the real property seller, thus acting in a capacity analogous to a traditional mortgage servicer. Ordinarily, businesses performing these services segregate funds through numerous bank accounts based on the nature and purpose of the funds (escrow, trust, or operational) and occasionally further delineate the funds by individual clients.

4. **JENSEN-TANNER**'s day-to-day responsibilities included sole and exclusive oversight of all of RES's 1031 business as well as directing out-going wire transfers. **JENSEN-TANNER**'s position allowed him to access all of the RES corporate bank accounts and freely move funds back and forth between RES trust accounts, RES operating accounts, and his personal accounts.

5. **JENSEN-TANNER** made representations both orally and in writing to his 1031 exchange clients that the corpus of the trust would remain untouched until such a time as the clients needed the funds to purchase a like-in-kind property. Additionally, **JENSEN-TANNER** made representations both orally and in-writing to his real estate contract servicing clients that funds held in escrow would be held for the sole purpose of paying property taxes and insurance premiums.

Execution of the Scheme

6. On or before January 11, 2017, **JENSEN-TANNER** began to comingle funds within the RES corporate accounts, notably by moving funds held in trust to operating accounts and vice-versa, which cuts against the established best practices of the industry.

7. From on or about January 11, 2017, and continuing to on or about October 23, 2019, **JENSEN-TANNER** made a high-volume of consumer purchases directly from RES corporate accounts that were made exclusively for personal enrichment, all of which required the transmission of signs and signals transmitted by means of wire communications in interstate commerce between financial institutions. These included but were not limited to the transfers below.

| Count | Approximate date of wire transfer | Amount | Recipient |
|---|---|---|---|
| 1 | March 8, 2017 | $5,800.00 | Crown & Caliber Jewelry |
| 2 | March 14, 2017 | $2,415.00 | Crown & Caliber Jewelry |
| 3 | April 28, 2017 | $3,400.00 | Crown & Caliber Jewelry |
| 4 | September 6, 2018 | $12,000.00 | Living Reflections, LLC, Luxury Rehabilitation |
| 5 | September 11, 2018 | $53,000.00 | Living Reflections, LLC, Luxury Rehabilitation |
| 6 | September 21, 2018 | $23,696.37 | Silva Construction Company |
| Total | | $100,311.37 | |

8. From on or about January 11, 2017, and continuing to on or about October 23, 2019, **JENSEN-TANNER** transferred funds from RES corporate accounts at Wells Fargo bank to a holding account for Wells Fargo certified funds tied to Wells Fargo cashier's checks, all of which required the transmission of signs and signals transmitted by means of wire communications in interstate commerce. **JENSEN-TANNER** then transferred these certified funds to pay for personal expenses directly or via his personal checking account. These included but were not limited to the transfers below.

| Count | Approximate date of purchase of cashier's check | Amount | Recipient of Cashier's Check or Purpose |
|---|---|---|---|
| 7 | April 4, 2017 | $16,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 8 | April 20, 2017 | $10,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 9 | May 25, 2017 | $15,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 10 | June 16, 2017 | $5,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 11 | July 12, 2017 | $3,500.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 12 | July 18, 2017 | $15,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 13 | July 31, 2017 | $7,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 14 | August 11, 2017 | $6,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 15 | October 2, 2017 | $100,000.00 | Merematt, LLC |
| 16 | October 6, 2017 | $7,500.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 17 | October 20, 2017 | $8,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 18 | November 9, 2017 | $5,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 19 | December 11, 2017 | $5,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 20 | December 22, 2017 | $4,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 21 | January 10, 2018 | $9,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 22 | January 18, 2018 | $10,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 23 | February 6, 2018 | $7,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 24 | February 15, 2018 | $5,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 25 | March 13, 2018 | $19,500.00 | Bullock's Jewelry |
| 26 | March 22, 2018 | $8,000.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 27 | April 17, 2018 | $8,500.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |
| 28 | April 26, 2018 | $8,500.00 | **JENSEN-TANNER**'s personal checking account at Valley Bank |

| 29 | May 17, 2018 | $8,000.00 | JENSEN-TANNER's personal checking account at Valley Bank |
| 30 | June 18, 2018 | $6,000.00 | JENSEN-TANNER's personal checking account at Valley Bank |
| 31 | July 10, 2018 | $20,000.00 | JENSEN-TANNER's personal checking account at Valley Bank |
| 32 | July 19, 2018 | $107,080.25 | M.H. and L.H. |
| 33 | September 12, 2018 | $30,000.00 | JENSEN-TANNER's personal checking account at Valley Bank |
| 34 | August 2, 2019 | $8,000.00 | JENSEN-TANNER's personal checking account at Valley Bank |
| Total | | $461,580.25 | |

In violation of 18 U.S.C. § 1343.

Counts 35-38

10.     From on or about April 6, 2017, and continuing to on or about July 19, 2018, in Chaves County, in the District of New Mexico, and elsewhere, the defendant, **CHRISTOPHER ADAM JENSEN-TANNER** knowingly engaged and attempted to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of funds, such property having been derived from a specified unlawful activity, that is, wire fraud.

| Count | Corresponding Wire Fraud Count | Approximate date of transaction | Amount | Recipient of Criminally Derived Property |
|---|---|---|---|---|
| 35 | 7 | April 6, 2017 | $15,989.56 | Fertility Center of New Mexico |
| 36 | 15 | October 2, 2017 | $100,000.00 | Merematt, LLC |
| 37 | 25 | March 13, 2018 | $19,500.00 | Bullock's Jewelry |
| 38 | 32 | July 19, 2018 | $107,080.25 | M.H. & L.H. |

In violation of 18 U.S.C. § 1957.

5

## FORFEITURE ALLEGATION

Counts 1-34 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

Upon conviction of any offense to conspire to violate 18 U.S.C. § 1343, the defendant, **CHRISTOPHER ADAM JENSEN-TANNER,** shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 all property constituting or derived from proceeds traceable to the commission of the offense.

The property to be forfeited to the United States includes, but is not limited to, at least $2,024,812.94.

MONEY JUDGMENT:

A sum of money, representing all property constituting or derived from proceeds traceable to the commission of the offense, including but not limited to, at least $2,024,812.94.

SUBSTITUTE ASSETS:

If any of the above-described forfeitable property, as a result of any act or omission of the Defendant:

    A. Cannot be located upon exercise of due diligence;

    B. Has been transferred or sold to, or deposited with, a third person;

    C. Has been placed beyond the jurisdiction of the Court;

    D. Has been substantially diminished in value;

    E. Has been comingled with any other property which cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to 21 U.S.C. 853(p), as incorporated by 28 U.S.C. 2461, to seek forfeiture of any other property of the defendant up to the value of the

forfeitable property described above.

A TRUE BILL:

_____/S/_____
FOREPERSON OF THE GRAND JURY

_____
Assistant United States Attorney

7