**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA

v.

Case No. 2:22-cr-00368-MIS

CHRISTOPHER JENSEN-TANNER,

Defendant.

**ORDER DENYING MOTION FOR EXTRAORDINARY RELEASE**

**THIS MATTER** is before the Court on Defendant Christopher Jensen-Tanner's Motion for Extraordinary Release ("Motion"), ECF No. 71, filed March 18, 2026. Because Defendant provided no evidence in support of his Motion, and because, even if he had, compassionate release is not merited, the Court will **DENY** the Motion.

**I.      Background**

On March 8, 2022, a Grand Jury sitting in the District of New Mexico returned a thirty-eight count Indictment charging Defendant with thirty-four counts of wire fraud (Counts 1-34), in violation of 18 U.S.C. § 1343, and four counts of engaging in monetary transactions in property derived from specified unlawful activity (Counts 35-38), in violation of 18 U.S.C. § 1957. Indictment, ECF No. 2. On April 26, 2023, Defendant pled guilty pursuant to a written Plea Agreement to Counts 5 and 37 of the Indictment. Plea Agreement at 5-6, ECF No. 35; Plea Min. Sheet at 1, ECF No. 37.

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") outlining the offense conduct. ECF No. 41. Briefly, Defendant owned and operated Roswell Escrow Services, Inc. ("RES"), which (1) served as a Qualified Intermediary for 1031 exchanges, and (2) serviced real estate contracts. Id. ¶ 13. Both functions

entail holding money for clients that either should be left untouched and unspent (1031 exchanges) or may only be spent for limited purposes (real estate contracts).  Id.  Around 2017, Defendant began living beyond his means and began using clients' funds to pay for his personal lifestyle which included frequent travel, luxury goods, and personal real estate purchases.  Id.  Eventually, Defendant's scheme was discovered and an investigation revealed that RES had a shortfall of funds owed to customers nearing $3,000,000.  Id. ¶ 19.  Ultimately, the total loss amounted to $1,219,928.92.  Id. ¶¶ 25-26.

The PSR assigned Defendant a Total Offense Level of 23 which included a two-level increase under United States Sentencing Guideline ("U.S.S.G.") § 2B1.1(b)(10)(C) for using sophisticated means, id. ¶ 36, a two-level increase under U.S.S.G. § 3B1.3 for abusing a position of public or private trust, id. ¶ 38, and a three-level decrease under U.S.S.G. §§ 3E1.1(a) & (b) for acceptance of responsibility, id. ¶¶ 42-43.  Because Defendant had no prior criminal history, his criminal history score was zero, which established a Criminal History Category of I.  Id. ¶ 48. With a Total Offense Level of 23 and a Criminal History Category of I, Defendant's advisory guideline imprisonment range was 46 to 57 months.  Id. ¶ 82.

On July 25, 2024, the Court held a sentencing hearing during which it adopted the PSR's factual findings, accepted the Plea Agreement, and sentenced Defendant on Counts 5 and 37 to concurrent terms of 46 months' imprisonment, to be followed by three years' supervised release.[1] Sentencing Min. Sheet, ECF No. 56; see also Judgment, ECF No. 57.  On September 25, 2024, the Court entered an Unopposed Order of Restitution.  ECF No. 65.

---

[1]     On July 30, 2024, the Court granted the Government's Motion to Dismiss the remaining counts. ECF No. 59.

On March 18, 2026, Defendant, though counsel, filed the instant Motion for Extraordinary Release, invoking 18 U.S.C. § 3582(c)(1)(A)(i).  ECF No. 71.

According to the Bureau of Prisons ("BOP")'s website, Defendant is currently being detained at FCI Atlanta, and is scheduled for release on May 31, 2027.

## II.    Legal Standard

Title 18, United States Code, Section 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, contains the so-called "compassionate release" provision.  That statute provides, in relevant part:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>
> **(1)** in any case—
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction;
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The court may grant compassionate release (or otherwise reduce a sentence) pursuant to Section 3582(c)(1)(A)(i) only if the movant establishes all three of the following elements: (1) that "extraordinary and compelling reasons warrant such a reduction[;]" (2) the "reduction is consistent

3

with applicable policy statements issued by the Sentencing Commission[;]" and (3) the applicable factors set forth in 18 U.S.C. § 3553(a) support a sentence reduction. United States v. Maumau, 993 F.3d 821, 831 & n.4 (10th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1042-43 (10th Cir. 2021). A district court may deny compassionate release if any of these elements is lacking. Maumau, 993 F.3d at 831 n.4; McGee, 992 F.3d at 1043. "The moving defendant bears the burden of establishing that such a 'compassionate release' is warranted under the statute." United States v. Moreno, 519 F. Supp. 3d 937, 941 (D. Kan. 2021).

Effective November 1, 2023, the United States Sentencing Commission revised U.S.S.G. § 1B1.13 "rendering the policy statement applicable and controlling the definition of 'extraordinary and compelling reasons' when a prisoner initiates a § 3582(c)(1)(A) proceeding." United States v. Mulder, Case No. 19-CR-0157-001-JFH, 2024 WL 382048, at *2 (N.D. Okla. Jan. 31, 2024). Under U.S.S.G. § 1B1.13, the Court may reduce a term of imprisonment if:

> **(1)(A)** Extraordinary and compelling reasons warrant the reduction; or
>
> **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> **(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a). As relevant here, extraordinary and compelling reasons for a sentence reduction include certain medical circumstances of the defendant. U.S.S.G. § 1B1.13(b)(1). Specifically, the Policy Statement's "Medical Circumstances of the Defendant" provision states that extraordinary and compelling reasons exist if:

> **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e.,

4

a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(B)** The defendant is--

    **(i)** suffering from a serious physical or medical condition,

    **(ii)** suffering from a serious functional or cognitive impairment, or

    **(iii)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

**(D)** The defendant presents the following circumstances--

    **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

    **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

    **(iii)** such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

### III.    Discussion

#### a.    Exhaustion

As a threshold matter, Defendant argues that he exhausted his administrative remedies with BOP by submitting a request for compassionate release to the Warden of FCI Atlanta in October 2025, which was subsequently denied on December 30, 2025. Mot. at 2. However, he failed to provide any <u>proof</u> of exhaustion. This failure is grounds enough for denying the Motion. <u>See United States v. Hemmelgarn</u>, 15 F.4th 1027, 1029-31 (10th Cir. 2021) (observing that because the defendant had "failed to provide proof that he exhausted his administrative rights as is required under § 3582(c)(1)(A)" it typically "would be the end of the line for" the defendant, but ultimately holding that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional but instead is a

mandatory claim-processing rule, and finding that the Government waived the exhaustion issue by failing to argue it on appeal); United States v. Fillman, Case No. 06-10218-JWB, 2025 WL 1918570, at *3 (D. Kan. July 11, 2025) (denying a motion for compassionate release because the defendant "failed to establish proof that he exhausted his administrative remedies under § 3582(c)(1)(A)" and the Government did not waive the issue).

**b.      Extraordinary and compelling reasons**

Even assuming arguendo that Defendant did, in fact, exhaust his administrative remedies as required by § 3582(c)(1)(A), or that the Government would waive the issue, Defendant failed to establish extraordinary and compelling reasons for compassionate release.

Defendant argues that extraordinary and compelling circumstances warrant his release under the "Medical Circumstances of the Defendant" provision of U.S.S.G. § 1B1.13(b)(1) because he "is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the BOP[.]" See Mot. at 2. In this regard, Defendant argues that on August 19, 2025, while incarcerated at FCI Atlanta, he "suffered cardiac arrest, he was pulseless, technically dead, and had to be resuscitated." Id. He states that the "likely trigger" for this event was "severe single-vessel coronary artery disease, specifically a 90–99% calcified blockage (stenosis) in the ostial portion of his Left Anterior Descending (LAD) artery[.]" Id. at 3. He states that the "single-vessel coronary artery disease is extremely severe, characterized as life-threatening and requiring urgent surgical intervention." Id. He has subsequently undergone a coronary artery bypass graft, which restored blood flow to his heart "but did not remove the underlying atherosclerotic disease from his native arteries." Id. at 4. He was discharged with "Coronary Artery Disease" and an ongoing "discharge problem" and prescribed "a daily lifelong regimen of medications, including aspirin, Plavix (clopidogrel), statins (atorvastatin), and beta-

blockers (metoprolol)." Id. Defendant has experienced what he describes as "ongoing complications" since his release from the hospital and return to FCI Atlanta. Id. at 5.

However, once again, Defendant provides no proof of any of these statements—he has provided no medical records, prison records, or evidence of any kind supporting his assertions. Therefore, he has failed to establish extraordinary and compelling circumstances warranting compassionate release. See United States v. Yong, 95-CR-0825(JS), 2024 WL 3648259, at *6 (E.D.N.Y. Aug. 5, 2024) ("[I]n considering Defendant's health condition, i.e., hypertension, and its management, the Court notes Defendant has not provided any medical records substantiating the condition he asserts he suffers; yet, it is his burden to prove compassionate release is warranted."); United States v. Wagner, No. 17-CR-0106, 2024 WL 2801981, at *5 (E.D.N.Y. May 31, 2024) (finding, where the defendant did not provide any medical records substantiating the conditions from which he asserted he suffered, the defendant failed to meet his burden of showing entitlement to compassionate release based upon those purported medical conditions); United States v. Caitano, CR. NO. 18-00167 HG-02, 2022 WL 16553362, at *3 (D. Haw. Oct. 31, 2022) (denying motion for compassionate release where the defendant alleged "a number of new medical conditions without providing supporting evidence").

Defendant has further failed to prove that his alleged conditions substantially diminish his ability to provide self-care within the environment of a correctional facility. Consequently, he has failed to establish that release would be consistent with U.S.S.G. § 1B1.13's Policy Statement. See United States v. Farmer, 04-CR-0209(JS), 2025 WL 3033762, at *11 (E.D.N.Y. Oct. 30, 2025) ("[U]pon the record presented, which does not include any of Defendant's medical records, Defendant has failed to show his medical condition so incapacitate[d] him as to warrant a reduction of his sentence.") (internal quotation marks and citation omitted); Yong, 2024 WL 3648259, at *6

7

(finding that "in the absence of records demonstrating his suffering from hypertension to such a degree that he is unable to self-care, Defendant cannot sustain his burden warranting compassionate release").

### c.    18 U.S.C. § 3553(a)

Even assuming arguendo that Defendant has established (1) he exhausted his administrative remedies, (2) extraordinary and compelling reasons for a sentence reduction, and (3) that a sentence reduction would be consistent with applicable policy statements issued by the Sentencing Commission, the Court finds that the 3553(a) factors do not support a sentence reduction.

First, the nature and circumstances of Defendant's offense are serious. See 18 U.S.C. § 3553(a)(1). Defendant was convicted of wire fraud, in violation of 18 U.S.C. § 1343, and engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957. See Judgment, ECF No. 57. There are at least ten identifiable victims of Defendant's crimes whose accumulated loss total $786,659.59. PSR ¶ 24. Defendant used money the victims entrusted to him to fund his personal lifestyle which included frequent travel, luxury goods, and personal real estate purchases. Id. ¶¶ 13, 20. When including unpaid taxes, the total loss amounted to $1,219,928.92. Id. ¶¶ 25-26. The nature and circumstances of Defendant's crimes do not support compassionate release. See United States v. Shepherd, Case No. 4:19-cr-00128-DN-PK-3, 2020 WL 7771029, at *3 (D. Utah Dec. 30, 2020) (finding that the nature and circumstances of the defendant's conviction for conspiracy to commit wire fraud did not support compassionate release where the defendant conspired "with his family members to defraud an elderly woman (1) by soliciting payments of cash and assets in exchange for false promises to perform work for [the victim] and (2) by helping and encouraging Frank Powell to engage in a

8

romance fraud in which he enticed [the victim] into a fake romantic relationship") (internal quotation marks omitted).

The Court acknowledges that Defendant has no prior criminal history. However, the Court finds that under the circumstances of this case, a reduction of Defendant's 46-month sentence is not warranted when considering the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(A) – (C). To begin with, Defendant's 46-month sentence is at the bottom of the guideline imprisonment range. See PSR ¶ 82. He was sentenced on July 25, 2024, ECF Nos. 56, 57, and has therefore served approximately 20 months of his sentence. The Court finds that granting Defendant's Motion after serving less than half of his sentence "would do little to 'promote respect for the law' or 'provide just punishment for the offense.'" United States v. Daugerdas, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020) (citing 18 U.S.C. § 3553(a)(2)(A)); see also United States v. Goldberg, 13-CR-120 (JMA), 2020 WL 6273947, at *3 (E.D.N.Y. Oct. 26, 2020) (finding that granting compassionate release to defendant convicted of wire fraud and conspiracy to commit mail and wire fraud after serving less than 30% of his sentence "would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct[,]" "fail to reflect the seriousness of the offense Defendant committed and would not provide a just punishment for his conduct[,]" and "would also undermine the Court's attempt to use the sentence to promote respect for the law and serve as a deterrent for criminal conduct").

When considering all of the applicable 3553(a) factors, the Court finds that a sentence reduction is not merited. See Goldberg, 2020 WL 6273947, at *3; see also United States v. Weir, 22cr695-001 (DLC), 2024 WL 3429480, at *4 (S.D.N.Y. July 16, 2024) (finding that the 3553(a)

9

factors did not support compassionate release for defendant who was convicted of conspiracy to commit wire fraud where "[h]e engaged for many months in a massive fraud, a fraud from which he personally profited handsomely"); United States v. McDonald, Case No. 4:20-cr-00029-DN, 2022 WL 604860, at *4 (D. Utah Mar. 1, 2022) (finding that the 3553(a) factors did not support compassionate release for defendant who was convicted of wire fraud where the defendant embezzled over $400,000 from the company he worked for, "violating his fiduciary duties and trust").

## IV.    Conclusion

Accordingly, it is **HEREBY ORDERED** that Defendant Christopher Jensen-Tanner's Motion for Extraordinary Release, ECF No. 71, is **DENIED**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE